# The Howard Oil & Grease Company, Appellant, *v.* W. B. Hughes.

*Attachment execution—Creditor stands in shoes of debtor.*

Attaching creditors of a corporation stand in no better position in respect to a fund than their judgment debtor, and on a claim of that company that its funds have been improperly diverted, the burden would be upon the judgment debtor to prove a wrongful diversion.

*Corporate powers as to negotiable paper—Ultra vires—Fraud—Burden of proof.*

An express authority is not indispensable to confer upon a corporation the right to borrow, to deal on credit or become the drawer, indorser or acceptor of a bill of exchange, or to become a party to any negotiable paper.

In the case at bar a company made application of its funds by the indorsement of a borough order for the benefit of another company with which it presumably had financial relations; the burden of proof was upon the party alleging the indorsement and delivery of the borough order to be fraudulent or ultra vires to prove the allegation.

Argued Oct. 24, 1899. Appeal, No. 166, Oct. T., 1899, by plaintiff, from judgment of C. P. Clearfield Co., Dec. T., 1897, No. 401, in favor of defendant, the case being tried before the court without a jury. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by W. W. PORTER, J.

Feigned issue and order by the court to determine the right to money in the hands of a garnishee. Before GORDON, P. J.

It appears from the record that the case was tried before GORDON, P. J., without a jury in accordance with the provisions of the Act of assembly of April 22, 1874, P. L. 109. The facts sufficiently appear from the opinion of the court.

The following requests were made, inter alia, by the plaintiff for findings of fact and law:

[Both M. I. McCreight and W. B. Hughes had notice and knowledge at the time said deposit was made that said money was the money of the DuBois Electric Light, Power & Heat Company. *Answer:* This point is refused. They had knowledge that the order on which the money was obtained from the bank had been the property of the light company, but it had parted with its title, and the money with which the certificate of deposit to McCreight was purchased belonged to the railway company.] [1]

[On August 6, 1897, and before any work was done under the contract between the railway company and W. B. Hughes, the street railway corporation, with all its rights, property and franchises was sold at sheriff's sale by the sheriff of Clearfield county, and thereafter said railway company ceased to exist or to own any railway or other property, and said W. B. Hughes

never in fact performed said contract for the party with which it was made, and was never entitled to receive from said party any compensation for the work specified in said contract to be done.  *Answer:* This point is refused.] [2]

[W. B. Hughes was not a bona fide holder for value and does not occupy the position of such holder.  *Answer:* Refused.] [3]

[The rights of the plaintiff are superior to the rights of W. B. Hughes and are prior in time, for, the plaintiff being a creditor of the corporation owning the money, said debt was in contemplation of law a lien upon said corporation's property and assets from the time of inception of said debt, which was prior to the time of making the Hughes contract.  *Answer:* Refused.] [4]

[Under the seventh finding of facts, even if the light company had the legal right to make said deposit to secure the performance of the railway company's contract, the deposit could not now be held after the railway company ceased to exist, and had ceased to exist before any work was done for it, and when in fact no work was ever actually done under said contract for said railway company.  *Answer:* Refused.] [5]

[The plaintiff is entitled to recover in this action.  *Answer:* Refused.] [6]

The court overruled plaintiff's fifth exception, which exception and ruling thereon were as follows:

[The court erred in its general finding of facts contained in the fourth paragraph, inasmuch as that there is no evidence in the case to show that Mr. Bailey was acting for the street railway company or for Mr. Hughes, and the undisputed evidence is that he was dealing with the light company's property and acting for it in making the deposit in the bank, and the certificate of deposit so shows, and the finding is therefore based upon a mere supposition and in direct conflict with the evidence.  *Answer:* After argument the within exceptions are overruled. Judgment ordered to be entered according to decision filed. Exception noted to plaintiff in each case.] [7]

The court directed judgment in favor of defendant.  Plaintiff appealed.

*Errors assigned* among others were (1, 2) in answers to re-

quests for findings of fact, reciting same.    (3–6) In answer to plaintiff's requests for findings of law, reciting same.    (7) In overruling plaintiff's fifth exception, reciting same.    (9) In directing judgment in favor of defendant.

*A. L. Cole*, with him *H. A. Moore*, for appellant.—We confidently ask this court to reverse the court below on its finding of fact as well as of law, notwithstanding the well settled rule that the findings of fact have the force and effect of a verdict. The reason we do this is that the findings of fact complained of are entirely unsupported by any testimony, and are in square contradiction of the facts admitted in the case on both sides. The theory adopted by the court below was one of its own formation, and was not suggested by either party during the trial of the case.

We take it to be the law that the property and assets of a corporation are held in trust for the payment of its debts, and its creditors have a right to pursue it into whosesoever possession it may be found, unless such person be a bona fide purchaser for value.

This is the doctrine laid down in the case of Montgomery Web Company v. Dienelt, 133 Pa. 585.   We do not understand that this doctrine is controverted by the defendant.

We maintain that the theory upon which the court below built its opinion and decided this case has nothing at all to do with the facts or the law rightly applicable thereto.

*David L. Krebs*, with him *William Paterson*, for appellee.— The fund transferred to Hughes and placed in McCreight's hands to hold until his work was completed was not a transfer by the stockholders of the Electric Light Company to themselves, as in Montgomery Web Co. v. Dienelt, supra, but was in fact a transfer to the DuBois Traction Railway Company, and by it to Hughes.

The difficulty with the appellant's case is that in order to reverse the court below, it is necessary to reverse the rule of law, that fraud is not to be presumed, but must be proven, and establish a new rule, and that is, that fraud need not be proven, but may be presumed.

The doctrine of ultra vires when invoked for or against a cor-

poration should not be allowed to prevail where it would defeat the ends of "justice or work a legal wrong:" Railway Co. v. McCarthy, 96 U. S. 258; Morris Railway Co. v. R. R. Co., 20 N. J. Eq. 542; Whitney Arms Co. v. Barlow, 63 N. Y. 62.

The maxim omnia præsumuntur rite esse acta applies to acts done on behalf of corporations: Taylor on Private Corporations (2d ed.), sec. 204; Yates v. Van DeBogert, 56 N. Y. 526.

The party alleging fraud, if the transaction is not fraudulent per se, must prove it to the satisfaction of the court and jury: Roberts v. Guernsey, 3 Grant, 237.

There is no proof that there was no consideration passing from the traction railway company to the light company for the $700 placed in McCreight's hands for Hughes's benefit.

OPINION BY WILLIAM W. PORTER J., January 17, 1900:

The issue in this case was framed to determine whether the money in the hands of McCreight was properly payable to W. B. Hughes, or under the attachment executions issued upon judgments against the DuBois Electric Light, Power and Heat Company. We are of opinion that no error was committed by the court below, before whom the issue was tried without a jury, in holding W. B. Hughes to be entitled to the fund.

The borough of DuBois desired to pave two of its streets. Hughes was a bidder for the contract. The DuBois Traction Railway Company operated a railway upon these streets. The duty of the company was to conform its road to grade, prepare the same for brick, and do the paving between and for a distance of one foot beyond, the rails. The borough refused to contract with Hughes for the borough paving, unless Hughes would, at the same time, contract with the railway company for the work it was required to do. Hughes declined to do this unless the railway company secured to him the payment of the contract price for their work. The sum of $700 seems to have been due by the borough to the electric light company for lighting the streets. An arrangement was arrived at by which an order was drawn by the borough for $700 payable to the electric light company. This order was indorsed and deposited in the bank of which McCreight was cashier. He agreed to hold the same in trust to secure Hughes under his contract with the railway company. The transaction was in

effect, a payment by the light company to the railway company and a deposit by them with McCreight as security aforesaid. There is no disclosure, in the evidence, of the business relations subsisting between the two companies. The transaction on its face indicated that there was an indebtedness by the light com pany to the railway company to the amount of $700. The two companies were ascertained subsequently to be in financial difficulties. Judgments were obtained against the light company, and attachments sur judgment were levied on McCreight as garnishee, claiming the fund in his hands as the moneys of the light company. Hughes completed his work for the railway company and demanded payment from McCreight of the fund in his hands as security.

On behalf of the attachments it is argued that the moneys were diverted from the light company in aid of the railway company, and that this, in view of the impending insolvency of the light company and in the absence of any evidence of indebtedness to the railway company, was an unauthorized appropriation of the moneys of the light company.

The question resolves itself into one of corporate power. If the light company had power to make a payment of the money to the railway company, the railway company had undoubted power to deposit it in trust as security for its contract with Hughes. Under the circumstances, is the burden upon the attaching judgment creditors of the light company to prove the diversion of the funds to be ultra vires, or upon Hughes, the other claimant to the fund, to prove the contrary? The attaching creditors stand in no better position in respect to the fund than their judgment debtor. On a claim of that company that its funds have been improperly diverted, the burden would be upon that company to prove a wrongful diversion. The transaction is without the impress of fraud or of knowledge, on the part of the other claimant to the fund, of any wrongful diversion of the funds by the light company. It is but the application of its funds by the indorsement of a borough order for the benefit of another company, with which it presumably had financial relations. In McMasters v. Reed's Executors, 1 Grant, 36, it is said : " In general an express authority is not indispensable to confer upon a corporation the right to borrow, to deal on credit or become a drawer, indorser or acceptor of a

bill of exchange, or to become a party to any negotiable paper; " and in the same case, Mr. Justice LEWIS says : " If the holders of bonds and other negotiable paper against corporations, having general authority to make such contracts, were bound to encounter the presumption that they were illegal, their character and value would be destroyed, and the mischief would be intolerable. In this case there is no evidence to repel the presumption that the bonds were issued in the course of the lawful business of the company."

Applying this presumption to the case at bar, the burden was upon the party alleging the indorsement and delivery of the borough order to be fraudulent or ultra vires to prove the allegation. There was no such proof adduced.

The judgment of the court below is, therefore, affirmed.